JUDGE NATHAN



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRADLEY A. LANG,

Plaintiff,

-against-

ALVAREZ & MARSAL HEALTHCARE
INDUSTRY GROUP, LLC, ALVAREZ &
MARSAL HOLDINGS, LLC, and
ALVAREZ & MARSAL, INC.,

Defendants.

**COMPLAINT**

No. 13-CV-____

Plaintiff Bradley A. Lang (hereinafter "Lang"), by his undersigned attorneys, Hoguet Newman Regal & Kenney, LLP, for his Complaint against Defendant Alvarez & Marsal Healthcare Industry Group, LLC (hereinafter "A&M Healthcare"), Alvarez & Marsal Holdings, LLC (hereinafter "A&M Holdings"), and Alvarez & Marsal, Inc. (hereinafter "A&M Inc."), alleges as follows:

### NATURE OF THE CLAIM

1.      This is an action for damages arising from Defendants A&M Healthcare's, A&M Holdings's, and A&M Inc.'s breach of contract and tortious interference with prospective economic advantage.

2.      As a member and Managing Director of A&M Healthcare, Lang fulfilled all of his duties, including, but not limited to, sharing his business relationships, bringing in new business, servicing existing business and new business, and participating in the management of A&M Healthcare.  Throughout his time at A&M Inc. and A&M Healthcare to the present, Defendants have interfered with Lang's business relationship by openly criticizing and disparaging Lang

inside and outside the firm. This continuous conduct has destroyed much of Lang's business relationships and irreparably harmed him in the restructuring market.

3.  Although Lang had performed all of his duties as Managing Director and brought in new business, Defendants failed to compensate Lang as they promised in their compensation system.

4.  In May 2008, A&M Healthcare purportedly terminated Lang. However, A&M Healthcare failed to purchase back Lang's Membership Units as required by the First Amended and Restated Limited Liability Company Agreement of A&M Healthcare (the "LLC Agreement").

5.  Lang has lost millions of dollars in compensation and business opportunities in the restructuring and health care restructuring market as a result of Defendants' breach of contract and interference with his business relationships. Lang also suffered consequential damages and damage to his professional reputation.

## JURISDICTION AND VENUE

6.  This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 (a)(2) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between Plaintiff Lang, a citizen of California, and Defendants A&M Health, a Delaware limited liability company with its principal place of business in New York, A&M Holdings, a Delaware limited liability company with its headquarters in New York, and A&M Inc., a New York corporation, with its principal place of business in New York, New York.

7.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a) because A&M Healthcare's principal place of business and A&M Holdings' headquarters are located in New York, NY and A&M Inc. is a New York corporation. Venue is

also proper under Section 17.7 of the LLC Agreement which provides that this District is the exclusive venue for disputes arising out of it.

8.    This Court has personal jurisdiction over Defendants, each of whose principal place of businesses is in New York, New York and through their express consent to this Court's jurisdiction under Section 17.7 of the LLC Agreement.

## THE PARTIES

9.    Plaintiff Lang is an individual residing in Los Angeles County.   Lang is a business consultant who specializes in restructuring companies in the healthcare field.   In November 2002, Lang was recruited to join A&M Inc. as a Senior Director in the Los Angeles office.

10.    Defendant A&M Healthcare is a Delaware limited liability corporation with a principal place of business located at 600 Lexington Avenue, 6th Floor, New York, New York 10022.

11.    Defendant A&M Holdings is a Delaware limited liability corporation with headquarters located at 600 Madison Avenue, 8th Floor, New York, New York 10022.

12.    Defendant A&M Inc. is a New York corporation with its principal executive office located at 600 Lexington Avenue, 6th Floor, New York, New York 10022.

## FACTUAL BACKGROUND

13.    The Alvarez & Marsal organization is a global professional services firm specializing in turnaround and interim management, performance improvement and business advisory services of various industries, including the healthcare industry.   A&M Holdings is a parent company to A&M Healthcare.

### A&M Inc. Hires Lang

14.    A&M Inc. hired Lang as a Senior Director in November 2002.  Prior to joining A&M Inc., Lang spent 12 years working in the restructuring market and cultivating the relationships and building the reputation that he had enjoyed.  The company repeatedly represented to Lang during the recruiting process that A&M Inc. regularly engaged in principal situations allowing it and its members to take equity positions in distressed companies which would allow them to reap rewards far in excess of hourly fees generated in fee-only assignments. However, at no time during his employment with A&M Inc. did it offer to allow Lang to participate in an opportunity to receive equity in a distressed situation.

15.    During Lang's employment at A&M Inc. to present, Lang was subjected to repeated disparagement and abuse by various affiliates of Defendants, particularly Steven Varner and William Kosturos.  Mr. Varner, Mr. Kosturos and others have disparaged Lang in the market, encouraged individuals in the marketplace to look to them for assistance previously rendered by Lang and have criticized Lang's skills and experience in order to gain advantage for themselves.  Such pervasive disparagement continues to the present time and has interfered with Lang's business relationships and career advancement.

16.    Throughout his employment with A&M Inc., Lang greatly contributed to the firm by promoting the companies' interests, sharing his business relationships, recruiting and developing personnel and selling and performing work, which earned A&M Inc. tens of millions of dollars of revenue.

17.    Lang was repeatedly assured by A&M Inc. management that he would be "taken care of," or in other words, compensated, for his contributions to the firm and for the mistreatment of Lang by Mr. Varner, Mr. Kosturos, and others.

## A&M Inc. and A&M Holdings Form A&M Healthcare

18.     In or about July 2006, A&M Inc. and A&M Holdings, through its agents, formed A&M Healthcare to focus on its healthcare consulting business.  A&M Healthcare was organized with two classes of Membership Units.  A&M Holdings owns the Class A Units and certain Managing Directors of A&M Healthcare own the Class B units.

19.     Lang became a Managing Director and unit holder of A&M Healthcare.  Lang was assured by the companies' leadership that he would be "taken care of" in this new position. Lang understood this to mean that he would be compensated for joining this new venture according to the Defendants' compensation system thereby rewarded and for his diligence and efforts to grow A&M Healthcare.  Lang relied on this representation when he joined A&M Healthcare.

## Defendants Breach Their Agreement to Compensate Lang In Accordance With Their Stated Compensation System

20.     Lang performed all of his duties as a Managing Director, including, but not limited to, bringing in new business, servicing existing business and new business, and participating in the management of the Los Angeles office and A&M Healthcare.

21.     Defendants' compensation system was clearly communicated and was a commission system which paid managing directors' commissions for contributing to selling or for leading engagements.  The compensation system was communicated by memoranda, which were authored by the co-founders of the Alvarez and Marsal organization, Antonio Alvarez II and Bryan Marsal.  Mr. Alvarez and Mr. Marsal periodically distributed the memoranda to the members of the firm regarding the compensation system.

22.     Defendants failed to compensate Lang for the year 2007 according to this compensation system.

23.     On December 20, 2007, Lang participated in his annual review in which his 2007 compensation was communicated to him. Lang's 2007 compensation was significantly less than that to which he was entitled under Defendants' compensation system. Defendants paid Lang this insufficent compensation later in December, a few days after his annual review.

### A&M Healthcare Purportedly Terminates Lang

24.     In May 2008, A&M Healthcare purportedly terminated Lang, without cause.

25.     Under section 12.7 of the LLC Agreement, A&M Healthcare was required to purchase Lang's Membership Units upon his departure from the Company. The Company did not buy back Lang's Membership Units as called for in the LLC Agreement.

26.     A&M Healthcare has breached section 12.7 of the LLC Agreement by failing to pay Lang for his Membership Units.

27.     A&M Healthcare has also failed to pay Lang his deferred compensation pursuant to section 6.3 of the LLC Agreement. Section 6.3 of the LLC Agreement states that each fiscal year, A&M Healthcare shall pay each Class B Member such amounts that are due to him in accordance with the terms of the Deferred Compensation Plan.

28.     A&M Healthcare has breached section 6.3 of the LLC Agreement by failing to pay out Lang's deferred compensation.

29.     Since May 2008, Lang has repeatedly requested that A&M Healthcare honor its contractual obligations, but it has refused to do so. Mr. Alvarez stated that Lang would receive his money when he stopped competing. However, the LLC Agreement does not condition the payment for Lang's Membership Units and deferred compensation on Lang's agreement not to compete, nor was Lang prohibited from competition.

## Lang Also Suffered Consequential Damages

30.     Defendants' failure to pay Lang the compensation to which he was entitled based on their previous representations and the compensation system and the purported termination without purchase of his Membership Units in May 2008, caused Lang to breach a liquidity covenant in a loan agreement with 1st Century Bank.  As a result, 1st Century Bank sued Lang and his wife for breach of the loan agreement, even though Lang was current on the loan.

31.     Upon information and belief, Martin Winter of A&M Healthcare was aware of Lang's financial obligations to 1st Century Bank at the time it breached its contracts.  While not disclosing the reasons, Mr. Winter was panicked when engaged in telephone communications with Lang while Lang was discussing the liquidity covenant breach with 1st Century Bank in April 2008.  At no time did Lang make any disclosure to Winter or any other member of the firm concerning his relationship with 1st Century Bank.

32.     Prior to filing the litigation against Lang, 1st Century Bank received an escrow demand from Bank of West in the amount of Lang's debt to 1st Century Bank, which would have paid the loan from 1st Century Bank in full.  1st Century Bank, however chose to ignore the pay-off demand and instead instituted litigation on this performing loan.

33.     Lang and 1st Century Bank eventually entered into a stipulation of settlement, resolving that litigation.

34.     Upon information and belief, Defendants were aware of Lang's finances and obligations to 1st Century Bank.  Defendants were aware that their actions with respect to the LLC Agreement and Lang's compensation would impact his relationship with 1st Century Bank.

## The Consequences of Defendants' Deception

35.     Following Lang's purported termination in May 2008, A&M Healthcare indicated that it would continue to pay his $25,000 draw for three months as severance.  However, A&M Healthcare never paid Lang his severance as they promised and refused to discuss Lang's grievances with him and his attorney.

36.     A&M Healthcare's failure to pay him severance as they promised caused Lang's financial condition to worsen.  Upon information and belief, Lang's purported termination along with the non-payment of his severance was seen by 1st Century Bank as a deterioration of Lang's financial condition and greatly contributed to 1st Century Bank's decision to bring the injurious litigation against Lang.

37.     Upon information and belief, Lang's purported May 2008 termination, which was never finalized, was intended to be a deception; the leadership of the firm did not want Lang's peers to know that they were offering him a "special deal."

38.     Upon information and belief, this deception was the principal reason for the bizarre actions of 1st Century Bank, including but not limited to the Bank's election to ignore the Bank of the West escrow demand in the amount of Lang's debt and commence injurious litigation against Lang.

39.     In addition, Lang held a loan with Aurora Loan Services, which was owned by Lehman Brothers, which in 2010 was in turn controlled by Alvarez & Marsal, with Bryan Marsal acting as Chief Executive Officer.  Although Lang was behind on his loan payments in July 2010, he paid off the deficiency by August 9, 2010.

40.     Nonetheless, on August 17, 2010, a Notice of Default was filed against Lang's loan account despite the fact that Aurora Loan Services had received payment for the deficiency amount from Lang.

41.     Upon information and belief, Alvarez & Marsal influenced its agent, Aurora Loan Services, to file the unjustified Notice of Default against his loan account.

## CLAIMS FOR RELIEF

### First Claim for Relief
### Breach of Contract (Against All Defendants)

42.     Lang realleges paragraphs 1 to 41 of the Complaint, as if fully set forth herein.

43.     Defendants' compensation system paid managing directors' commissions for contributing to selling or for leading engagements.  This compensation system was clearly communicated to Lang through memoranda, which were authored by the co-founders of the company, Antonio Alvarez II and Bryan Marsal.  Mr. Alvarez and Mr. Marsal periodically distributed the memoranda to Defendants' employees regarding the compensation system.

44.     Upon information and belief, the compensation system for commissions applied across the entire organization, including A&M Healthcare.

45.     Defendants repeatedly represented to Lang that he would be "taken care of" for his contributions to the firm, which Lang understood to mean that he would be rewarded with cash compensation according to the compensation system.  Lang agreed to join A&M Healthcare and performed all of his duties as Managing Director, including sharing his business relationships and bringing in new business based on the understanding and expected to be compensated as promised by Defendants.

46.     Defendants, however, failed to pay Lang in accordance with this compensation system.  Specifically, sometime after December 20, 2007, Lang received a payment that was a significant portion of his 2007 compensation that was far less than Defendants owed Lang.  As a result, his 2007 compensation was less than what he was entitled to based on the compensation system and on Defendants' representations that they would take care of Lang.

47.     Defendants' breach of contract has caused damages to Lang because he has not received full compensation for his work, in accordance with with Defendants' own compensation system.  Lang seeks damages in the millions of dollars, plus pre-judgment interest.

## Second Claim for Relief
## Breach of the LLC Agreement (Against A&M Healthcare)

48.     Lang realleges paragraphs 1 to 47 of the Complaint, as if fully set forth herein.

49.     Lang and A&M Healthcare entered into the LLC Agreement, pursuant to which Lang rendered consulting services on the company's behalf.

50.     Lang performed all of his duties under the LLC Agreement.

51.     When a Member is terminated without cause, section 12.7 of the LLC Agreement requires that A&M Healthcare purchase from such Member, and such Member to transfer to the A&M Healthcare, such Member's vested company units for a purchase price equal to their aggregate Buy-Out Value and unvested company units for a purchase price equal to their aggregate Buy-In Value.

52.     A&M Healthcare breached Section 12.7 of the LLC Agreement by failing to pay for his Membership Units as provided therein.

53.     A&M Healthcare's failure to purchase Lang's Membership Units has damaged Lang in an amount to be determined at trial, plus pre-judgment interest, pursuant to the buy-out

calculation set forth in Section 12.7 of the LLC Agreement, and based on A&M Healthcare's financials and performance since Lang's departure from the company, which is exclusively in Defendants' control.

54.    Defendants' breach of contract also caused Lang consequential damages.

55.    While he was a Managing Director of A&M Healthcare, A&M Healthcare knew that Lang was a debtor on a $650,000 unsecured line of credit with 1st Century Bank.

56.    Defendants' breaches of contract occurring 2008 caused Lang to breach his liquidity covenant on a loan agreement with 1st Century Bank and to be sued by the Bank in 2008.

57.    Because Defendants were aware of Lang's financial obligations to 1st Century Bank, it was forseeable that their breach would cause 1st Century Bank to take action against Lang.

58.    Lang seeks consequential damages in the amount to be determined at trial, plus pre-judgment interest.

59.    In addition, Lang seeks pre-judgment interest of all amounts owed based on A&M's compensation system and their representations of taking care of Lang.

### Third Claim for Relief
### Tortious Interference with Prospective Economic Advantage (Against All Defendants)

60.    Lang realleges paragraphs 1 to 59 of the Complaint, as if fully set forth herein.

61.    Prior to joining A&M Inc., Lang spent 12 years working in the restructuring market and building his business relationships and reputation.

62.    Defendants were aware of Lang's business relationships at all times.

63.     As a Managing Director, Lang shared these business relationships and brought in new business for Defendants.

64.     Since 2003 and ongoing to the present, Defendants, through their agents, Mr. Varner and Mr. Kosturos have intentionally engaged in an effort to learn of and steal Lang's business relationships by touting their seniority in the organization, openly criticizing and disparaging Lang, or manipulating the nature of engagements available to Lang.

65.     Specifically, Defendants' interference has destroyed much of Lang's business relationships and has caused significant harm to Lang in the restructuring market in California.

66.     Lang seeks damages in an amount to be determined at trial, plus pre-judgment interest.


### Fourth Claim for Relief
### Quantum Meruit (Against All Defendants)

67.     Lang repeats and realleges paragraphs 1 to 66 of the Complaint, as if fully set forth herein.

68.     As a result of Defendants' foregoing conduct, Lang has lost significant compensation which is payable to Lang in quantum meruit.

69.     Lang seeks damages equal to the fair and reasonable value of Lang's services, lost compensation and business relationships, an amount to be determined at trial.


WHEREFORE, Lang prays for judgment as follows:

1.  On the First Claim for Relief, compensatory damages in an amount to be proven at trial, together with pre-judgment interest of nine percent per annum in accordance with CPLR § 5004;

2.  On the Second Claim for Relief, compensatory damages in an amount to be proven at trial, together with pre-judgment interest of nine percent per annum in accordance with CPLR § 5004;

3.  On the Third Claim for Relief, compensatory damages in an amount to be proven at trial, together with pre-judgment interest of nine percent per annum in accordance with CPLR § 5004;

4.  On the Fourth Claim for Relief, compensatory damages in an amount to be proven at trial, together with pre-judgment interest of nine percent per annum in accordance with CPLR § 5004; and

5.  Such further relief as this Court deems appropriate.

Dated:  New York, New York
        December 20, 2013

                        **HOGUET NEWMAN**
                        **REGAL & KENNEY, LLP**


                        Joshua D. Rievman (JR-0539)
                        Kerin P. Lin (KL-4816)
                        Hoguet Newman Regal & Kenney, LLP
                        10 East 40th Street, 35th Floor
                        New York, NY 10016
                        Phone: 212-689-8808

                        *Attorneys for Plaintiff Bradley A. Lang*